IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| MARY ROSE BENNETTS, | ) | |
| | ) | |
| Plaintiff, | ) | CV 10-1124-PK |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

PAPAK, Magistrate Judge:

Plaintiff Mary Bennetts appeals the Commissioner's decision denying her application for
supplemental security income payments under Title XVI of the Social Security Act. The court has
jurisdiction under 42 U.S.C. § 405(g). Both parties have consented to allow a Magistrate Judge to
enter final orders and judgment in this case in accordance with F.R.C.P. 73 and 28 U.S.C. § 636(c).
For the following reasons, the Commissioner's decision is affirmed.

Bennetts alleged disability beginning October 2, 1997, due to hepatitis C with chronic fatigue, degenerative disc disease of the lumbar spine, left carpal tunnel syndrome, osteoarthritis of the right knee, reduced vision in the right eye, morbid obesity, depression, heart disease, sleep apnea, asthma, status post gall bladder removal, and post traumatic stress disorder ("PTSD"). Admin. R. 101, 105. Bennetts protectively filed her application on October 22, 2003. *Id.* at 100. The protective filing date marks the beginning of the relevant period for her claim because supplemental security income payments cannot be made retroactively. 20 C.F.R. § 416.501.

The administrative law judge ("ALJ") applied the five-step sequential disability determination process set forth in 20 C.F.R. § 416.920. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987)(describing the decision-making process in detail). As pertinent to this appeal, the ALJ found Bennetts's ability to perform basic work activities limited by a combination of impairments, including hepatitis C with chronic fatigue, lumbar degenerative disc disease, left carpal tunnel syndrome, osteoarthritis of the right knee, reduced vision in the right eye, morbid obesity, and depression. Admin. R. 17. The ALJ found the medical evidence did not support Bennetts's alleged medically determinable impairments of heart disease, obstructive sleep apnea, asthma, and PTSD. *Id.* at 18.

The ALJ found that, despite the effects of her medically determinable impairments, Bennetts retained the residual functional capacity ("RFC") to perform work at the sedentary level of exertion, with standing and walking limited to fifteen minutes at a time for a total of two hours in an eight-hour workday. She could not manipulate foot controls with the right foot and could only engage in occasional postural activities such as climbing, kneeling, crouching, stooping, and so forth. She

could not work in food service occupations and should avoid concentrated exposure to vibration, extreme cold, fumes, smoke, dust, or hazardous conditions. *Id.* at 20.

The ALJ elicited testimony from a vocational expert ("VE") about the requirements of Bennetts's past work. *Id.* at 906. The VE testified that a person with Bennetts's vocational factors and RFC could perform two jobs she had done in the past: mental health counselor and alcohol and substance abuse counselor. *Id.* at 907. The ALJ concluded that Bennetts was not disabled within the meaning of the Social Security Act. *Id.* at 23-24.

## STANDARD OF REVIEW

The court reviews that decision to ensure that proper legal standards were applied and the findings of fact are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of the Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). Under this standard, the Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record even if evidence exists to support another rational interpretation. *Batson,* 359 F.3d at 1193; *Andrews v. Shalala,* 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## DISCUSSION

**I.    Claims of Error**

Bennetts contends the ALJ erred in identifying her severe impairments by failing to include chronic obstructive pulmonary disease ("COPD"). Bennetts contends the ALJ failed to assess her RFC accurately because he discounted her subjective statements and rejected the opinion of her primary care provider, Cheryl Hickethier, M.D. Bennetts contends the ALJ's finding that she worked in the past as a mental health counselor and as an alcohol and substance abuse counselor is

not supported by substantial evidence. She argues that this undermines the ALJ's conclusion that she is capable of performing her past work in those occupations.

## II.    The Step Two Severity Requirement

Bennetts contends the ALJ erred at step two by failing to designate COPD among her severe impairments within the meaning of the regulations. At step two, a claimant must meet what is known as the severity requirement. The claimant must show that she has any combination of impairments which causes more than minimal limitation in her ability to do basic work activities. 20 C.F.R. § 416.920(c). If the claimant fails to make this *de minimis* showing, she is not disabled within the meaning of the Social Security Act and the disability determination process ends without further inquiry. 20 C.F.R. § 416.920(a)(4)(ii).

Here, the ALJ resolved step two in Bennetts's favor, finding her ability to perform basic work activities significantly affected by the combination of impairments described above. Admin. R. 17-18. After resolving step two in Bennetts's favor, the ALJ properly continued his inquiry until reaching a determination at step four of the decision-making process. Any error in failing to designate COPD as a separate and distinct severe impairment did not prejudice Bennetts at step two. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005)(Any error in omitting an impairment from the severe impairments identified at step two was harmless where step two was resolved in claimant's favor); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)(failure to list an impairment as severe at step two was harmless error where the ALJ considered the functional limitations posed by that impairment later in the decision).

After a claimant has surmounted step two by meeting the severity requirement, the ALJ must take into consideration in the remaining steps of the decision all evidence of functional limitations

imposed by medically determinable impairments, including any that were not identified as severe

at step two. 20 C.F.R. § 416.923; Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, *5. The

ALJ found the medical evidence showed normal pulmonary function instead of COPD or asthma.

Admin. R. 18. Dr. Hickethier suspected an asthma or COPD component to Bennetts's subjective

complaints of breathing problems, but made no diagnostic findings supporting that diagnosis. *Id.*

at 542. Nonetheless, the ALJ considered the evidence of Bennetts's alleged respiratory difficulties

in the remaining steps of his decision.

Notably, Bennetts did not include COPD or asthma when she identified the conditions

limiting her ability to work in the Disability Report submitted with her claim in 2003, or in March

2004, when she sought reconsideration after the initial denial of her claim. Admin. R 118-26, 158-

64. Bennetts first alleged COPD or asthma as a new diagnosis in February 2005, in the Disability

Report submitted with her request for an administrative hearing. *Id.* at 180.

Bennetts had subjective complaints of breathing difficulties and chest pain when she

established care with Dr. Hickethier in May 2004. *Id.* at 18. Dr. Hickethier was unsure of the

etiology of Bennetts's subjective breathing difficulties, but referred her for a cardiology work up and

prescribed a medication called Advair for opening air passages in the lungs. *Id.* at 556. Bennetts's

subjective symptoms reportedly improved with Advair, and Dr. Hickethier decided that additional

therapy was not needed. *Id.* at 550. 553.

In August 2004, Bennetts underwent pulmonary function testing which showed her lung

volumes and spirometry were normal. *Id.* at 598. Dr. Hickethier acknowledged that Bennetts had

normal baseline pulmonary function tests, but continued to monitor and treat Bennetts's subjective

symptoms which reportedly continued to respond to Advair. *Id.* at 512. In October 2004, Bennetts

reported feeling good and said the Advair helped her breathing. *Id.* at 539. In February 2005, Dr. Hickethier wrote that Bennetts's dyspnea had resolved with Advair and she had no wheeze or rhonchi. *Id.* at 524, 526.

Meanwhile, Bennetts's filed her supplemental Disability Report alleging a new diagnosis of COPD/asthma. *Id.* at 180. In March 2005, Bennetts told consulting cardiologist Katherine Strelich, M.D., that she had a history of COPD and asthma. *Id.* at 455. In May 2005, Bennetts complained of asthma symptoms, but her lungs were consistently clear on examination. Dr. Hickethier continued to prescribe inhalation medications on a regular monthly basis. *Id.* at 522. In June and September 2005, Bennetts's breathing symptoms were stable. *Id.* at 518, 520. In February 2006, Bennetts complained of increased breathing difficulties, but this coincided with an upper respiratory infection with a cough and sinus congestion. *Id.* at 511. Dr. Hickethier continued conservative treatment with an inhaler. *Id.* at 508, 510. In April 2006, Bennetts had subjective breathing difficulties and chest pain which coincided with her seasonal allergies. *Id.* at 506. In April and October 2006, Dr. Hickethier noted that Bennetts's breathing condition was stable. *Id.* at 505, 822.

The foregoing evidence does not establish medically determinable asthma or COPD or ongoing, persistent functional impairment from such a condition. At most, it reflects that Bennetts sometimes has subjective shortness of breath when walking which is generally well controlled by inhaled medications. Bennetts has not identified any medical evidence that the ALJ failed to consider regarding diagnostic evidence of or functional limitations from asthma or COPD. She has therefore failed to satisfy her burden of proving a medically determinable impairment or functional limitations from asthma or COPD. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009)(Burden of proof is on the claimant at step two).

Bennetts contends her shortness of breath when walking was corroborated by the written statement of her lay witness, Laura Harris. Pltfs. Br. 4. In December 2003, Harris provided a third-party function report, but the court finds no mention of breathing difficulty. Admin. R. 149-57. Even if Harris did observe Bennetts having breathing difficulty, it would be insufficient to establish a medically determinable impairment. Although a lay witness is competent to testify about a claimant's symptoms and how they affect a claimant's ability to work, lay witnesses are not competent to provide medical diagnoses or to establish the existence of a medically determinable impairment. 20 C.F.R. § 416.913(a); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). Here, the medically acceptable diagnostic techniques, specifically pulmonary function testing and frequent auscultation with a stethoscope, uniformly produced negative results except when Bennetts experienced acute infection of the upper respiratory tract. A lay witness's observations would not be sufficient to establish that Bennetts has a medically determinable pulmonary impairment.

Notably, Bennetts concedes that the ALJ correctly considered her "limitations with regard to respiratory/pulmonary problems" and objects only to his failure to identify COPD as a severe impairment at step two. Pl.'s Br. 4. Because the ALJ resolved step two in Bennetts's favor, and considered the functional limitations flowing from her subjective respiratory/pulmonary problems, it is of no consequence that he did not specifically designate COPD a severe impairment. *Burch*, 400 F.3d at 682; *Lewis*, 498 F.3d at 911.

## III.   RFC Assessment

A claimant's RFC assessment describes the work-related activities the claimant can still do despite the functional limitations imposed by her impairments. 20 C.F.R. § 416.945(a); SSR 96-8p,

1996 WL 374184.  The RFC assessment must be based on all the evidence in the case record, and

the ALJ must consider all allegations of limitations and restrictions.  SSR 96-8p, 1996 WL 374184

* 5.  Bennetts contends the ALJ failed to properly evaluate her testimony and the opinion of Dr.

Hickethier when assessing her RFC.  As a result, Bennetts argues, the ALJ's RFC assessment did

not accurately reflect all of her functional limitations and led the ALJ to erroneously conclude she

remains capable of performing past relevant work.

      A.     **Credibility Determination.**

      At the administrative hearing, Bennetts testified that her most limiting condition was arthritis

in her knees which left her unable to stand for any length of time.  She said she was taking 20

medications on a daily basis which left her drowsy during the day.  She said that degenerative disc

disease required her to put her legs up and rest during the day.  Admin. R. 889.  Bennetts testified

that she was able to drive and had a valid license, but preferred to use public transportation.  She

thought she could lift about five pounds and she used a cane when she walked.  A friend performed

most of her shopping and laundry.  *Id.* at 890-91.  During a typical day, she would sleep a lot, read

the paper, and watch television.  She usually would take a nap for an hour and a half in the afternoon.

*Id.* at 894-95.

      The ALJ accepted Bennetts's subjective claims of limited ability to stand and walk, and of

right knee discomfort, resulting in significant limitations as reflected in the RFC assessment.  *Id.* at

20.  Specifically, the ALJ found Bennetts had the capacity for no more than sedentary activity and

could stand and walk for no more than fifteen minutes at a time not to exceed a total of two hours

during an eight-hour day.  *Id.*  Giving Bennetts the benefit of any doubt regarding her respiratory

complaints, the ALJ assessed environmental limitations of avoiding concentrated exposure to

airborne contaminants. *Id.* The ALJ rejected, however, Bennetts's testimony to the extent she alleged functional limitations in excess of the RFC assessment, such as the alleged inability to lift more than five pounds, the need to recline with her feet up due to degenerative disc disease, the need to nap every day due to fatigue, and the inability to sustain any kind of full time work. *Id.* at 20.

If a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged and no affirmative evidence of malingering exists, the ALJ must assess the credibility of the claimant regarding the severity of those symptoms. *Smolen v. Chater*, 80 F3d 1273, 1281-82 (9th Cir 1996); *Cotton v. Bowen*, 799 F2d 1403, 1407-08 (9th Cir 1986); SSR 96-7p, 1996 WL 374186.

Here, the ALJ found Bennetts had medically determinable impairments that could reasonably be expected to produce some of her alleged symptoms. Accordingly, the ALJ was required to assess Bennetts's credibility regarding the severity of the symptoms she alleged. An ALJ may discredit the claimant's testimony regarding the severity of symptoms by providing specific reasons for the credibility finding, supported by the evidence in the case record. SSR 96-7p, 1996 WL 374186, at *4. The ALJ must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). In addition, the ALJ must provide a clear and convincing explanation of his credibility finding. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen*, 80 F.3d at 1283.

In assessing credibility, an ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations.

*Smolen*, 80 F.3d at 1284. The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.*; SSR 96-7p, 1996 WL 374186, at *5.

The ALJ considered the objective medical evidence. The ALJ found some of Bennetts's allegedly disabling conditions were not supported by diagnostic medical findings. Admin. R. 18, 21. For example, as touched on previously, Bennetts told Dr. Strelich she had a medical history of COPD and asthma, when in fact, her pulmonary function tests had been entirely normal and her subjective symptoms had reportedly resolved with an inhaler. *Id.* at 455, 512, 539, 598. Similarly, Bennetts alleges disability in part due to heart disease, despite a normal EKG in August 2004 and a cardiology consultation in March 2005 with Dr. Strelich which revealed no evidence of heart disease. *Id.* at 456, 576, 579, 580. Likewise, Bennetts alleged disability in part due to sleep apnea, but a sleep study in August 2004 was within normal limits with only mild primary snoring. *Id.* at 810. When Bennetts established care with Dr. Hickethier, she alleged Lou Gehrig's disease, but a neurology evaluation found no sign of this; she alleged vision loss but an ophthalmology evaluation found her vision normal; she alleged hearing loss but an evaluation showed her hearing was normal. *Id.* at 542, 549, 558-59.

In addition, Bennetts claimed mental impairment from PTSD, but psychological evaluations did not support this. In March 2002, James Bryan, Ph.D., performed a neuropsychological evaluation and found PTSD was not a viable diagnosis. *Id.* at 376. In March 2004, Duane Kolilis, Ph.D., performed a psychodiagnostic evaluation and found that Bennetts embellished her mental health treatment history and was not forthright with information about her history of involvement with the criminal justice system or about her history of drug and alcohol addiction. Her

psychological complaints appeared to be rehearsed and rote and based on knowledge acquired from her counseling background rather than actual experience of symptoms. Dr. Kolilis diagnosed a substance abuse disorder and could not rule out malingering. *Id.* at 416-17. He rated Bennetts's global functioning at 72 indicating no more than slight difficulties. *Id.* at 417. *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. Text Revision 2000) (a GAF of 71-80 indicates transient symptoms which are expected reactions to psychosocial stressors and cause no more than slight impairment of social, occupational, or school functioning.) In March 2006, Bennetts told her counselor her depression "not too severe" and a few months later she was deemed ready for discharge from counseling with moderate symptoms. Admin. R. 638, 664.

The multiple inconsistencies between Bennetts's alleged medical conditions and the diagnostic findings support an adverse inference as to her credibility. *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999).

The ALJ found Bennetts's alleged functional limitations disproportionate to the objective medical findings. Admin. R. 21. An ALJ may not reject subjective allegations as to the severity, intensity, or persistence of symptoms solely because it is not substantiated by objective medical evidence. *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 883 (9th Cir. 2005); *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998); SSR 96-7p, 1996 WL 374186 at *6. Nonetheless, objective medical evidence is a useful indicator to assist an ALJ in making reasonable conclusions about the intensity and persistence of a claimant's symptoms and the effect of the symptoms on the claimant's functioning. 20 C.F.R. § 416.929(c)(2). Medical findings consistent with the claimant's alleged symptoms tend to lend credibility to those allegations. A report of negative findings from the

11 - OPINION AND ORDER

application of medically acceptable diagnostic techniques tends to detract from the claimant's credibility. Thus, the absence of objective medical evidence supporting a claimant's statements about the intensity, persistence, and functional effect of her symptoms may be one of many factors the ALJ considers in the context of all the evidence in assessing credibility. SSR 96-7p, 1996 WL 374186 at *6; *Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir. 2007); *Burch,* 400 F.3d at 681.

The record as a whole supports the ALJ's finding that Bennetts's alleged functional limitations are disproportionate to the objective medical findings. Most of the progress notes of Bennetts's health care providers indicate generally benign or mild objective findings that do not suggest the extreme level of impairment Bennetts alleged. For example, Bennetts alleges extreme fatigue from hepatitis C. Atif Zaman, M.D., followed Bennetts's hepatitis C infection and found no signs of liver disease during 2003 and 2004. He believed obesity was Bennetts's main problem. Admin. R. 407, 409-10, 474-75. In 2005 Bennetts's disease began to advance, and in August she initiated interferon therapy which resulted in a subjective increase in fatigue. *Id.* at 848, 850. After two months of therapy, Bennetts had only mild fatigue which did not interfere with activity. *Id.* at 841, 843. By the completion of therapy, Bennetts's cirrhosis was stable and her hepatitis C virus was in sustained response to therapy with less than a one percent chance of relapse during her lifetime. Bennetts reported that her energy level was improving, and by her six month follow up after completion of interferon therapy, Bennetts denied fatigue and reported she felt well. *Id.* at 835, 855.

Although Bennetts alleges disability beginning in 1997, she did not complain of knee pain until November 2004. *Id.* at 535. Diagnostic imaging showed mild to moderate osteoarthritic narrowing in the medial compartment of the right knee joint. *Id.* at 595. In February 2005, Dennis Crawford, M.D., evaluated Bennetts's knee complaint and found that she was robust in the lower

extremities and ambulated without difficulty.   Dr. Crawford recommended conservative treatment with cortisone injections into the right knee joint.  *Id.* at 468-69.  By July 2006, Bennetts said the cortisone injections had lost effectiveness.  Her objective findings continued to show only mild to moderate osteoarthritis in the right knee.  *Id.* at 857.   Taken in context with the record as a whole, these mild objective findings and the negative diagnostic evaluations for pulmonary function problems, sleep apnea, Lou Gehrig's disease, heart disease, and so forth, tend to detract from Bennetts's credibility.

The ALJ also noted that Bennetts's treatment history reflected generally routine care with conservative treatment that has been generally successful in controlling her symptoms.  Admin. R. 21-22.  A conservative course of treatment can undermine allegations of debilitating symptoms. *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995); *Carmickle*, 533 F.3d at 1162.  Impairments that are effectively controlled by treatment are not disabling.  *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

Bennetts's treatment for hepatitis C was primarily routine monitoring of her liver function except during interferon therapy from August 2005 to Feburary 2006.  As described previously, she had a sustained response to the treatments and now has stable liver function with a very low risk of relapse.  She denied residual fatigue after completion of therapy.  Similarly, her breathing problems were reportedly completely controlled by inhalers. Her orthopedic providers treated her arthritic knee conservatively with cortisone injections and recommended further conservative management with weight loss, exercise, anti-inflammatories, and use of a cane. Admin. R.  857.  In July 2006, her orthopedist opined that weight loss by itself might resolve her knee symptoms.  *Id.*  The record also shows that Bennetts's depression was well-controlled with prescribed medications.  *Id.* at 645, 822.

13 - OPINION AND ORDER

The ALJ also found the treatment history reflected long periods during which Bennetts did not specify a particular complaint and had relatively infrequent trips to the doctor for allegedly disabling symptoms. *Id.* at 22. The ALJ found this inconsistent with Bennetts's allegations of disabling impairments since 1997. When a claimant does not seek treatment for an allegedly disabling condition, the ALJ may draw an adverse inference as to the credibility of the claimant's allegations. *Bruton v. Massanari,* 268 F.3d 824, 828 (9th Cir. 2001). An unexplained failure to seek treatment may cast doubt on the sincerity of a claimant's disability claim. *Flaten v. Sec'y of Health & Human Servs.,* 44 F.3d 1453, 1464 (9th Cir. 1995).

The treatment history shows that Bennetts did not seek treatment for carpal tunnel syndrome, lumbar degenerative disc disease, reduced vision, or morbid obesity during the time she claims to have been disabled by these conditions. Nor is there evidence that Bennetts complained of severe fatigue, consistent with her testimony. Dr. Hickethier's progress notes do not reflect complaints of severe fatigue or medication side effects. *Id.* at 506, 510, 823. Bennetts mentioned mild fatigue which increased during interferon therapy, but denied fatigue after completing that course of treatment. Accordingly, an adverse inference as to the sincerity of Bennetts's assertions of debilitating symptoms reasonably flows from the medical evidence and treatment history.

The ALJ also found Bennetts's activities inconsistent with the level of incapacity she claimed. *Id.* at 22. When a claimant's activities are inconsistent with her alleged limitations, the ALJ may draw an adverse inference as to the claimant's credibility. *Batson,* 359 F.3d at 1196. The record reflects that Bennetts creates, manufactures, and sells beadwork, walks, travels, and works in her yard. Admin. R. 535, 540, 657, 819, 835, 841, 853.

The ALJ found Bennetts's ability to travel and market her beadwork suggested she may remain capable of performing the basic demands of competitive work activity. *Id.* at 22. Contrary to her allegation of disability beginning in 1997, Bennetts submitted a work history report showing she was the owner of a craft business from 1985 to 2004, making approximately $30,000 annually. *Id.* at 131, 134. In October 2005, in the middle of her course of treatment with interferon, Bennetts reportedly continued to work without difficulty. *Id.* at 841. In April 2006, she reportedly experienced frustration associated with an increase in work. *Id.* at 657. In July 2006, Bennetts told her orthopedist that she supported herself with her own crafts business. *Id.* at 856. In November 2006, she told another health care provider she was "currently employed." *Id.* at 853.

In her hearing testimony, Bennetts minimized her work activity, indicating she had gross revenue of only $2000 in 2006. *Id.* at 900. She testified that she traveled to only two craft fairs per year, in Pendleton, Oregon, and Yakima, Washington. Bennetts stated that in order to attend the fairs, she required a companion to drive her and sit with her through the duration of each event. *Id.* at 901-02. These requirements were not reflected in her contemporaneous statements to health care providers. Bennetts admitted she was able to procure supplies and perform the work necessary to create her beadwork. *Id.* at 899-901. The ALJ could rationally conclude that Bennetts's contemporaneous reports of continuing work activity in her statements to health care providers reasonably suggest more extensive activity than Bennetts admitted in her testimony.

The ALJ also found Bennetts's out of state travel inconsistent with her alleged symptoms and limitations. *Id.* at 22. He conceded that travel and disability are not necessarily mutually exclusive, but suggested it was unlikely that a person with such extreme limitations as alleged by Bennetts would decide to take extended trips. He found Bennetts's "decision to go on an extended trip tends

to suggest that her . . . alleged symptoms and limitations may have been overstated." *Id.*   In addition to her trips for craft fairs, Bennetts traveled to Montana at least five times between June 2004 and October 2006.  *Id.* at 506, 558, 681, 675, 823.  The references in the record to these trips to Montana do not reflect that she required a driver or companion.

      Bennetts's activities are not equivalent to work activities performed on a sustained basis within the rigors of a work setting.  Nonetheless, they reasonably suggest that Bennetts engages in activities that would not be undertaken by a person with the limitations she claims.  Taken together with the record as a whole, these activities reasonably suggest that Bennetts is not as limited as she alleges.

      In summary, the ALJ considered the available evidence relating to proper factors for assessing credibility.  Taken as a whole, his explanation is clear and convincing and his factual findings are supported by inferences reasonably drawn from substantial evidence in the record. Bennetts urges the court to accept a different interpretation of the evidence, but the ALJ was in a better position to evaluate her credibility than is the court.  Even if the evidence could rationally be interpreted in a manner more favorable to Bennetts, the court must defer to the Commissioner's rational findings of fact. 42 U.S.C. § 405(g); *Batson,* 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).  The ALJ's decision provides an adequate basis for the court to conclude that he did not discredit Bennetts's subjective statements arbitrarily.  *Orteza*, 50 F.3d at 750; SSR 96-7p.  Accordingly, the credibility determination is upheld.

### B.    <u>Medical Source Statement</u>

      Bennetts contends the ALJ improperly discounted Dr. Hickethier's progress notes from an office visit on September 2, 2004.

Bennetts established primary care with Dr. Hickethier on March 21, 2004. *Id.* at 560. Bennetts had a long problem list, including sleep apnea, hypertension, myocardial infarction/heart, hepatitis C, cholesterol, arthritis and degenerative joint disease of the lumbar spine, Lou Gehrig's disease, depression, seizure-like "white out" symptoms, hearing loss, and macular degeneration. *Id.* at 558-59. Dr. Hickethier referred Bennetts for specialty evaluations which resulted in a normal sleep study, a normal cardiology work up, a neurology evaluation without signs of Lou Gehrig's disease, an ophthalmology examination indicating normal vision, and an ENT evaluation indicating normal hearing. *Id.* at 456, 542, 549, 555, 558-59, 576, 579, 580, 810. In August 2004, Bennetts complained of shortness of breath and dyspnea with exertion and Dr. Hickethier referred her for pulmonary function tests to rule out COPD. *Id.* at 547. Bennetts's results on these tests were normal. *Id.* at 545, 598, 601. This was the extent of Dr. Hickethier's treatment history with Bennetts preceding the office visit on September 2, 2004.

The office visit was to follow up the numerous specialty evaluations that had been done. Bennetts had a new complaint of poor memory for conversations and details of doctor visits and had concerns about memory, attention, concentration, and the impact of her medications on these abilities. Dr. Hickethier hoped Bennetts's mental health care providers could help clarify these issues. Dr. Hickethier wrote that Bennetts's memory concerns had "a significant impact on her daily task and any ability to hold employment." *Id.* at 543. Dr. Hickethier then wrote:

> Fatigue is most likely a combination of multiple health conditions, deconditioning. and medications. I would only expect an ability of a 4 hour work day for endurance, but the above memory becomes a concern.

*Id.*

The ALJ declined to give Dr. Hickethier's statement significant weight in his decision. *Id.* An ALJ can reject a treating physician's opinion in favor of the conflicting opinion of another treating or examining physician, if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002), quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the treating physician's opinion is not contradicted by another physician, then the ALJ may reject it only for clear and convincing reasons. *Id.* Here the ALJ gave greater weight to the opinion of Darin Brandt, D.O., who performed a consultative evaluation in March 2004. Admin. R. 22, 419-24. Accordingly, the court reviews for specific, legitimate reasons supported by substantial evidence.

The ALJ's explanation for the weight he gave Dr. Hickethier's progress notes includes specific, legitimate reasoning supported by substantial evidence. The ALJ said that the opinion was "so brief and conclusory that it lacks strong persuasive weight." *Id.* at 22. The ALJ may reject a physician's opinion that is brief, conclusory, and inadequately supported by clinical findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Meanal v. Apfel*, 172 F.3d 1111, 1117 (9th Cir. 1999). Dr. Hickethier's progress notes from May through September 2004 do not reflect complaints or concerns about fatigue or memory problems. *Id.* at 543-562. Dr. Hickethier made this statement without any explanation of the basis of her understanding of Bennetts's alleged limitations from memory impairment or fatigue.

The ALJ also found Dr. Hickethier's statement unsupported by "medically acceptable clinical or laboratory techniques." Admin. R. 22. An ALJ need not accept a physician's opinion when the physician fails to adequately explain and support the opinion with clinical findings. *Thomas*, 278 F.3d at 957; *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Dr. Hickethier's progress

notes do not include references to endurance or memory testing or attempts to treat Bennetts's alleged fatigue or memory limitations. Dr. Hickethier appeared to be at a loss regarding Bennetts's concerns for memory, attention, and concentration deficits, expressing hope that mental health care providers "would be able to do additional testing to help clarify." Admin. R. 543. In the complete absence of any clinical basis to support her statement, it is reasonable to infer that Dr. Hickethier relied heavily on Bennetts's subjective description of her fatigue and memory problems. The ALJ was entitled to give little weight to an opinion premised on subjective statements he found unreliable. *Tonapetyan*, 242 F.3d at 1149.

The ALJ found Dr. Hickethier's opinion "unsupported by other substantial evidence in the case record." Admin. R. 22. There is no evidence that Dr. Hickethier based her opinion on a review of clinical findings from other health care providers, for instance. The ALJ correctly found the record did not contain other opinions from treating or examining physicians during the relevant time indicating that Bennetts's had physical limitations consistent with Dr. Hickethier's opinion or greater than those in his RFC assessment. *Id.* at 23. The ALJ reviewed Bennetts's mental health care which focused on symptoms of depression and reflected generally moderate limitations without specific findings regarding deficits in memory, attention, or concentration. *Id.*

The ALJ provided specific and legitimate reasons for discounting Dr. Hickethier's statement in favor of Dr. Brandt's opinion. Dr. Brandt supported his opinion with clinical examination findings from his evaluation and from a review of Bennetts's medical records. *Id.* at 419-44. The ALJ found Dr. Brandt's opinion consistent with the record as a whole. *Id.* at 22. Bennetts has not provided any persuasive reason why the ALJ should have accepted Dr. Hickethier's unsupported

opinion instead of Dr. Brandt's well supported opinion. Accordingly, the Commissioner's decision will not be disturbed on the basis of the ALJ's evaluation of Dr. Hickethier's opinion.

## IV.    Vocational Evidence

Bennetts's challenges the ALJ's findings that she had past relevant work as a mental health counselor and as a substance abuse counselor and that she retained the capacity to return to those occupations.

At step four of the decision-making process, the claimant bears the burden of proving she can no longer perform her past relevant work either as she actually performed it or as it is generally performed in the national economy. *Carmickle*, 533 F.3d at 1166; *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002). Past relevant work is work that a claimant performed within the last fifteen years, which lasted long enough for her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 416.965(a).

In the application documents Bennetts's submitted in 2003, Bennetts's described her work history. Admin. R. 106, 131. Bennetts indicated she worked from 1992 to 1999 as a "Mental Health and Alcohol and Drug Counselor," earning $8.50 per hour and working 20 hours per week. *Id.* at 106, 131, 132. In addition, Bennetts indicated she worked in 1993 and 1994 as a "Counselor Trainee," earning $7.50 per hour and working 21 hours per week. *Id.* at 131, 133. These reported earnings exceed the level which presumptively shows substantial gainful activity for the pertinent time. *See* 20 C.F.R. § 416.974(b)(2) (for the period 1990 to 1999, average earnings of $500 per month ordinarily show substantial gainful activity).

Bennetts's argues that her Social Security earnings records, based on income she reported to the IRS on form W-2, do not show earnings amounting to substantial gainful activity in the two

occupations described on her work history report. Admin. R. 88. Bennetts's offers no explanation

why her own work history report would be inaccurate; she offers no persuasive argument why the

ALJ should disregard the information she submitted. The argument suggests Bennetts's considers

her own reporting unreliable. Because the ALJ could reasonably rely on Bennetts's description of

her past work and earnings, Bennetts's has not satisfied her burden of proving she did not have

income from her counseling jobs that exceeded the level that shows substantial gainful activity.

Bennetts also argues that the ALJ erroneously relied on the VE's testimony without

determining whether it was consistent with the Dictionary of Occupational Titles. The VE testified

that a person with Bennetts's RFC and work history could perform the requirements of her past jobs

as Mental Health Counselor and Substance Abuse Counselor. Admin. R. 907. The ALJ relied in

part on that testimony, as Bennetts contends. *Id.* at 24. As part of his duty to develop the record,

an ALJ must inquire on the record whether a VE's testimony is consistent with the DOT. SSR 00-

4p, 2000 WL 1898704, *2. Although the ALJ found there was such consistency, the hearing

transcript shows that he did not inquire of the VE in compliance with SSR 00-4p. Admin. R. 24,

905-08.

This error was harmless in the circumstances of this case. To establish disability at step four

of the decision-making process, Bennetts must prove that she cannot perform her past jobs either (1)

in the manner the jobs are generally performed in the national economy or (2) in the manner she

actually performed them when she was working. *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir.

2001); *Carmickle*, 533 F.3d at 1166. The ALJ found Bennetts could perform her past counseling

jobs both ways. Admin. R. 24.

Bennetts's challenge to the vocational testimony affects only the findings about how the jobs are generally performed in the national economy. DOT descriptions of occupations can be relied upon to define a job as it is usually performed in the national economy. SSR 82-61, 1982 WL 31387, *2. If the VE's testimony was inconsistent with the DOT descriptions, the ALJ's reliance on that testimony would undermine his understanding of how those jobs are usually performed in the national economy.

In contrast, neither VE testimony nor DOT job descriptions are necessary to determine the requirements of a job as it was actually performed by the claimant. A properly completed Vocational Report on Form SSA 3369 may be sufficient to furnish information about past work. SSR 82-61, 1982 WL 31387, *2. Here, the ALJ relied on the work history Bennetts provided on Form SSA 3369. Admin. R. 132, 133. None of the activities in Bennetts's descriptions conflicted with the limitations in the ALJ's RFC assessment. Accordingly, even if the VE's testimony was inconsistent with the DOT job descriptions, the ALJ's finding that Bennetts remains capable of the requirements of her past counseling jobs as she actually performed them remains undisturbed. Where an ALJ's remaining reasoning and ultimate determination are adequately supported in spite of the error committed, the error is harmless. *Carmickle*, 533 F.3d at 1162-63 & n. 4.

## CONCLUSION

The Commissioner's decision is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. Under these circumstances, the court must affirm the Commissioner. 42 U.S.C. § 405(g).

\\\

## ORDER

For the foregoing reasons, the Commissioner's decision is affirmed.

IT IS SO ORDERED.

DATED this 20th day of October, 2011.

Paul Papak
United States Magistrate Judge