IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

MARY ROSE BENNETTS,

    Plaintiff,

v.

3:10-CV-1124-PK

OPINION AND
ORDER

MICHAEL J. ASTRUE,

    Defendant.

PAPAK, Magistrate Judge:

    Plaintiff Mary Rose Bennetts filed this action against defendant Michael A. Astrue, Commissioner of Social Security, on September 17, 2010, seeking judicial review of the Commissioner's decision finding her not disabled for purposes of entitlement to supplemental security income ("SSI") under Title XVI of the Social Security Act. On October 20, 2011, I issued an order affirming the Commissioner's final decision, but on April 11, 2012, based on the parties' stipulations, the Ninth Circuit vacated my disposition and remanded the matter back to this court for the purpose of allowing the court to remand the matter back to the Agency for further proceedings consistent with the parties' stipulation. The Circuit's Federal Appellate procedure Rule 41(a) mandate to that effect issued June 6, 2012. Bennetts moved for an award of attorney fees pursuant to the Equal Access to Justice Act (the "EAJA") on May 15, 2012, and on that same date I granted the motion, authorizing award of fees to Bennetts pursuant to the

Page 1 - OPINION AND ORDER

EAJA in the amount of $5,651.06.

Now before the court is Bennett's unopposed motion (#29) for approval of payment to her counsel out of her retroactive benefits award of $38,524.00 the amount of $3,979.94, pursuant to 42 U.S.C. § 406(b). I have considered the parties' briefs and all of the evidence in the record. For the reasons set forth below, Bennetts' motion is granted, and payment to Bennetts' counsel of attorney fees in the amount of $3,979.94 is approved.

## ANALYSIS

Pursuant to 42 U.S.C. § 406(b), Bennetts' counsel seeks the court's approval of payment to him of attorney fees out of Bennetts' retroactive benefits award in the amount of $3,979.94 (calculated by subtracting $5,651.06, the amount of the EAJA attorney fee award counsel has already received, from $9,631.00, which latter amount constitutes 25% of Bennetts' retroactive benefits award of 38,524.00). Section 406(b) provides, in relevant part, as follows:

> Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment. . . .

42 U.S.C. § 406(b)(1)(A). By contrast with fees awarded pursuant to the EAJA, a fee-shifting statute, Section 406(b) fees are paid out of the retroactive benefits awarded to the successful Social Security claimant. *See id.* Counsel representing Social Security claimants may not seek compensation from their clients for trial litigation other than through a Section 406(b) fee. *See id.* In the event that both an EAJA fee is awarded and a Section 406(b) fee payment is approved, the claimant's counsel must refund to the claimant the amount of the smaller of the two payments. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 796 (2002). Any Section 406(b) fee must

Page 2 - OPINION AND ORDER

be approved by the court following analysis of its reasonableness before it may be paid. *See* 42 U.S.C. § 406(b)(1)(A).

In *Gisbrecht*, the Supreme Court established that the reasonableness of a 406(b) contingency fee is not to be determined primarily by reference to the lodestar method which governs fee-shifting disputes. *See Gisbrecht*, 535 U.S. at 801-802. Instead, to the extent contingency fee agreements do not provide for fees exceeding 25% of claimants' retroactive benefits, their terms are fully enforceable subject only to the court's review "to assure that they yield reasonable results in particular cases." *Id.* at 807. It is the claimant's counsel's burden to establish the reasonableness of the calculated fee. *See id.*

In assessing the reasonableness of a Section 406(b) fee, courts look first to the contingency fee agreement itself, and then may reduce the resulting award "based on the character of the representation and the results the representative achieved." *Id.* at 808. The *Gisbrecht* court provided, as examples of circumstances that could justify a downward reduction, situations in which the attorney was responsible for delay or in which "the benefits are large in comparison to the amount of time counsel spent on the case." *Id.* The court specified that "the court may require the claimant's attorney to submit, not as a basis for satellite litigation, but as an aid to the court's assessment of the reasonableness of the fee yielded by the fee agreement, a record of the hours spent representing the claimant and a statement of the lawyer's normal hourly billing charge for noncontingent-fee cases." *Id.*, *citing Rodriquez v. Bowen*, 865 F.2d 739, 741 (6th Cir. 1989) (*en banc*).

The Ninth Circuit's *en banc* decision in *Crawford v. Astrue*, 586 F.3d 1142 (9th Cir. 2009), applied the *Gisbrecht* reasonableness analysis. The *Crawford* court reviewed the

Page 3 - OPINION AND ORDER

consolidated appeals of three different actions in which district courts reduced Section 406(b) fees from the amounts requested. In the first of these, claimant Clara Crawford was represented by attorney Brian Shapiro. *See Crawford*, 586 F.3d at 1144. The Administration initially denied Crawford's application for benefits, but following litigation, ultimately awarded her $123,891.20 in past-due benefits. *See id.* at 1145. Although Shapiro and Crawford had entered into a contingency fee agreement that provided for a 25% contingency fee, Shapiro requested a fee of only $21,000, or 16.95% of Crawford's retroactive benefits, representing an amount 3.55 times the amount that would have resulted from a lodestar calculation. *See id.* The district court found no evidence of fraud or over-reaching in the negotiation of the fee agreement, that Shapiro had caused no unnecessary delay, and that Shapiro's lodestar calculations were correct. *See id.* However, the district court found that Shapiro had not met his burden to show that the requested "enhancement" of the lodestar figure was reasonable, because he had not presented evidence of his own firm's success rate in representing Social Security claimants (as opposed to data regarding the success rate of Social Security claimants generally) and because Crawford's attorneys' skill and experience were already reflected in the lodestar figure. *See id.* The court ruled, without explanation, that a 40% "enhancement" over the lodestar figure was reasonable, and on that basis awarded a fee of $8,270.00, the equivalent of 6.68% of Crawford's retroactive benefits. *See id.*

In the second action of the consolidated appeal, claimant Ruby Washington was represented by attorney Young Cho. *See id.* at 1144. As in Crawford's case, the Administration initially denied Washington's application for benefits, but following litigation, awarded $76,041.00 in retroactive benefits. *See id.* at 1145. Although Cho and Washington had entered

Page 4 - OPINION AND ORDER

into a contingency fee agreement that provided for a 25% contingency fee, Cho requested a fee of only $11,500, or 15.12% of Washington's retroactive benefits, representing an amount 1.82 times the amount that would have resulted from a lodestar calculation. *See id.* The district court found no evidence of fraud or over-reaching in the negotiation of the fee agreement, that Cho had caused no unnecessary delay, and that Cho's lodestar calculations were correct. *See id.* at 1146. However, as for Shapiro, the district court found that Cho had not met his burden to show that the requested "enhancement" of the lodestar figure was reasonable, because he had not presented evidence of his own firm's success rate in representing Social Security claimants, because Washington's attorneys' skill and experience were already reflected in the lodestar figure, and because Cho had not been required to do much work to obtain benefits on Washington's behalf. *See id.* The court ruled, without explanation, that a 40% "enhancement" over the lodestar figure was reasonable, and on that basis awarded a fee of $8,825.53, the equivalent of 11.61% of Washington's retroactive benefits. *See id.*

In the third action of the consolidated appeal, claimant Daphne M. Trejo was represented by attorney Denise Bourgeois Haley. *See id.* at 1144. As in Crawford's and Washington's cases, the Administration initially denied Trejo's application for benefits, but following litigation, awarded $172,223.00 in retroactive benefits. *See id.* at 1146. Although Haley and Trejo had entered into a contingency fee agreement that provided for a 25% contingency fee, Haley requested a fee of only $24,000, or 13.94% of Washington's retroactive benefits, representing an amount 2.79 times the amount that would have resulted from a lodestar calculation. *See id.* The district court found no evidence of fraud or over-reaching in the negotiation of the fee agreement, that Haley had caused no unnecessary delay and that her representation had been excellent, and

Page 5 - OPINION AND ORDER

that Haley's lodestar calculations were correct, except that 1.5 hours of claimed paralegal time and 1.4 hours of claimed paralegal time had been improperly attributed to the federal action. *See id.* However, as for Shapiro and Cho, the district court found that Haley had not met her burden to show that the requested fee was reasonable, because she had not presented evidence of her own firm's success rate in representing Social Security claimants, because Trejo's attorneys' skill and experience were already reflected in the lodestar figure, and because Haley had not presented evidence that Haley's firm had been precluded from accepting other work in consequence of Haley's representation of Trejo. *See id.* The court ruled, without explanation, that a 100% "enhancement" over the lodestar figure was reasonable, and on that basis awarded a fee of $12,650.40, the equivalent of 7.35% of Trejo's retroactive benefits. *See id.*

The *Crawford* majority characterized the district courts' decisions as impermissibly beginning with the lodestar calculation and determining a reasonable fee award by applying enhancements to the lodestar figure, rather than by beginning with the claimants' fee agreements and applying any appropriate reductions to the calculated contingency fees to arrive at reasonable fees. *See id.* at 1150. In addition, the *Crawford* majority found no evidence of substandard performance or dilatory conduct by the claimants' attorneys, and that the requested fees were not "excessively large" in relation to the benefits achieved. *See id.* at 1151-1152. On the basis of these findings, the *Crawford* majority found that the requested fees were reasonable in each case, and therefore reversed each district court's decision with instructions to award the requested fees. *See id.* at 1152.

As a separate and independently adequate ground for vacating the orders below, the *Crawford* court further noted the district courts' failure to explain the bases for the percentages

Page 6 - OPINION AND ORDER

they found to constitute reasonable enhancements of the lodestar figure in each case. *See id.* The court also rejected the district courts' reliance on the attorneys' failure to provide firm-specific success rates as a basis for reducing the requested fee awards. *See id.* at 1152-1153.

Here, the Administration initially rejected Bennetts' application for SSI benefits, only to award her $38,524.00 in retroactive benefits following litigation. As in the cases reviewed by the *Crawford* and *Gisbrecht* courts, Bennetts entered into a contingency fee agreement with her counsel providing for payment of 25% of her retroactive benefits to her attorney. It therefore now falls to me to assess whether $9,631.00, or 25% of the retroactive benefits award, constitutes reasonable compensation for Bennetts' counsel under the various factors discussed in *Gisbrecht* and *Crawford*.

### A. Character of the Representation

#### 1. Quality of Attorney Performance

As *Gisbrecht* and *Crawford* both make clear, substandard performance by a legal representative warrants a reduction in a Section 406(b) fee award. *See Gisbrecht*, 535 U.S. at 808; *Crawford*, 586 F.3d at 1151. Here, there is no indication in the record that Bennetts' counsel's representation of his client was in any way substandard. No reduction in the Section 406(b) fee is therefore warranted due to the character of counsel's legal representation.

#### 2. Dilatoriness

A Section 406(b) award may properly be reduced if any delay in proceedings is properly attributable to the claimant's counsel. *See Gisbrecht*, 535 U.S. at 808; *Crawford*, 586 F.3d at 1151. Here, although counsel for Bennetts filed multiple motions for extension of time to file her opening memorandum, each such extension was for a short period of time, and the delay in

these proceedings caused by such extensions was insignificant. Review of the record does not suggest that counsel was otherwise responsible for any unreasonable delay of these proceedings. No reduction in the Section 406(b) fee is warranted on the basis of dilatory performance.

### B.     Proportionality of Benefits Awarded to Attorney Time Spent

The *Gisbrecht* and *Crawford* courts both held that a Section 406(b) award could be reduced if the benefits awarded to the Social Security claimant were out of proportion to the time spent by the claimant's attorney. *See Gisbrecht*, 535 U.S. at 808; *Crawford*, 586 F.3d at 1151. Although neither court's opinion provides significant guidance as to how to measure such disproportionality, *Gisbrecht* established, *see* 535 U.S. at 808, and *Crawford* affirmed, *see* 586 F.3d at 1151, that records of attorney time expended and a statement of the attorney's normal hourly fee in non-contingent matters could be considered in this connection, but only as an "aid" in assessing the reasonableness of the award provided in the contingency fee agreement.

Here, Bennetts' counsel offers no evidence of either the number of hours he expended in representing his client, of the hours he expended in connection with specifically identified litigation tasks, or of his typical hourly rate for non-contingency work. Instead, counsel offers only the unsworn assertion that he expended "approximately 42 hours in work on Claimant's behalf," comprised of "approximately six hours of work in interviewing claimant, reviewing the record, and gathering additional records," "approximately 32 hours" in pre-award litigation before this court, and "four hours" for post-award services, and the unsworn assertion that his typical hourly rate for noncontingency work is $300 per hour. I am concerned by counsel's failure to provide the court with documentary evidence of contemporaneously maintained records of time expenditures in connection with this matter. It is counsel's burden to support his Section

Page 8 - OPINION AND ORDER

406(b) fee petition with evidence from which the court can assess the reasonableness of his time expenditures, and I do not treat his failure to make any effort to meet that burden lightly. However, in light of the Commissioner's express election not to oppose counsel's petition and of the relatively modest number of expended hours asserted to be at issue, for purposes of the motion I accept as accurate counsel's unsworn assertions as to the number of hours expended and his typical hourly rate.

As to counsel's hourly rate, I take judicial notice that the Oregon State Bar Economic Surveys provide information as to rates prevalent in various Oregon legal communities in the years in which survey data are collected. I further take judicial notice that the Oregon State Bar 2012 Economic Survey provides information as to rates actually charged by Oregon attorneys in 2011. According to the 2012 Economic Survey, the median hourly rate charged by Portland-area attorneys practicing in "other" areas of private practice in 2011 was $300.00, the same rate as counsel asserts to be his typical hourly rate. I thus accept counsel's unsworn assertion as to his typical hourly rate, and find that rate to be reasonable for non-contingency matters.

Considered in isolation, the product of the lodestar calculation can at best be of extremely limited utility in assessing the reasonableness of a contingency fee. The lodestar method of calculating fees is designed for use where it is intended that an attorney be compensated strictly for time expended and not on the basis of results achieved, milestones reached, or any of the myriad other bases by which clients may permissibly compensate their legal representatives, and where the probability of nonpayment is both low and unrelated to the attorney's ultimate success or failure. By contrast, the method authorized under Section 406(b) is one designed to compensate attorneys commensurately with results achieved. As a matter of logic, the fact

Page 9 - OPINION AND ORDER

(standing alone) that a fee calculated according to the lodestar method differs from a fee calculated according to a contingency fee agreement is uninformative as to whether the contingency fee might be disproportionate.

Approaching the question from first principles, it is clear that the disproportionality analysis can have nothing to do with the absolute amount of the Section 406(b) fee requested, since that fee is always a maximum of 25% of the retroactive benefits award, and must instead necessarily address primarily the effective requested hourly rate that may be back-derived by dividing the putative contingency award by the number of hours spent in pursuing it. Although that effective requested hourly rate cannot usefully be directly compared to a reasonable hourly fee to determine its proportionality, it is logically defensible to posit, at least in the abstract, that an effective requested hourly rate is not disproportionately high if it is less than or equal to the product of a reasonable hourly rate for non-contingent matters and the reciprocal of the pre-litigation probability that litigation would lead to a favorable result, based on the particular facts presented in a given case.[1] That is, an effective requested hourly rate cannot be disproportionately high if it does not overcompensate an attorney for the risk that attorney assumed at the time the representation was undertaken that the attorney would ultimately receive no compensation for his or her services. An attorney is not overcompensated for such risk if the pre-litigation expected value of the representation – the probability of a favorable result times the compensation that would be received in the event of a favorable result – does not exceed the

---

[1] Thus, if $100 is a reasonable hourly rate of compensation for non-contingent matters, an effective requested hourly rate would not be disproportionate in light of the risk a particular contingency matter presented if, *e.g.*, the effective requested hourly rate did not exceed $400 (or four times the reasonable hourly rate) where the probability of a favorable outcome was 25% (or a one in four chance).

Page 10 - OPINION AND ORDER

product of the appropriate hourly rate and the expected number of hours required.

In addition to giving cognizable effect to the *Gisbrecht* court's suggestion that an attorney's normal hourly rate could bear materially on the disproportionality analysis and the *Crawford* court's suggestion that case-specific risk could be a material factor in assessing the reasonableness of a Section 406(b) fee, measuring the relationship between a reasonable hourly fee for non-contingent matters and the effective requested hourly rate by reference to the case-specific risk of an unfavorable result has the benefit of suggesting a potentially useful metric for assessing proportionality: a contingency fee award is disproportionately high where it disproportionately overcompensates for the pre-litigation risk of an unfavorable result. I therefore assess the proportionality of the fee requested in this action to the time expended in litigation by reference to this risk-assessment metric.

According to his unsworn assertion, Bennetts' counsel expended 42 hours in connection with litigating Bennetts' application for SSI benefits. To give effect to the contingency fee arrangement in place between Bennetts and her counsel would thus yield an effective hourly rate of $229.31 (25% of $38,524.00 is $9,631.00; the quotient of $9,631.00 and 42 hours is $229.31 per hour). Because the back-derived rate for the contingency fee is lower than the $300 reasonable hourly rate for non-contingency matters, it is evident that the requested contingency fee cannot constitute overcompensation for the risk presented by counsel's decision to undertake Bennetts' representation, because it is logically impossible that the pre-litigation risk of an ultimate unfavorable outcome was less than zero. I therefore conclude that reduction is not warranted in connection with the proportionality factor, taking into account the case-specific risks and the appropriate normal hourly rate for non-contingent matters.

Page 11 - OPINION AND ORDER

### C.     Appropriate Fee

For the foregoing reasons, I find that the contingency fee agreement in place between Bennetts and her counsel is within the statutory limits provided in 29 U.S.C. § 406(b), and that the fee provided therein is reasonable. Counsel's motion for approval of Section 406(b) fees is therefore granted, and payment to Bennetts' counsel of $3,979.94 from Bennetts' retroactive fee award is approved.

### CONCLUSION

For the reasons set forth above, counsel's motion (#29) for Section 406(b) attorney fees is granted, and payment to Bennetts' counsel of $3,979.94 from Bennetts' award of retroactive SSI benefits is approved.

Dated this 10th day of December, 2012.

*[signature]*
Honorable Paul Papak
United States Magistrate Judge